# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **KENNETH BELL, SHERRY DABBS-LAURY, CHARLENE DIRKS, WENDY BROWN, and TONNIE WALKER-BECK, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Case No. 1:20-cv-00461** |
| **CAL-MAINE FOODS, ROSE ACRE FARMS, INC., HILLANDALE FARMS, TRILLIUM FARM HOLDINGS, LLC, REMBRANDT ENTERPRISES, INC., HICKMAN EGG RANCH, INC., DAYBREAK FOODS, INC., WEAVER BROS., INC., SPARBOE FOODS CORP., HERBRUCK'S POULTY RANCH, INC., CENTRUM VALLEY FARMS, L.P., OPAL FOODS, LLC, MIDWEST POULTRY SERVICES, L.P., COSTCO WHOLESARE CORP., ALBERTSON'S COMPANIES, INC., WAL-MART STORES, INC., THE KROGER CO., HEB GROCERY CO., L.P., BROOKSHIRE'S GROCERY CO., LOWE'S MARKETS, INC.** **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

## CLASS ACTION COMPLAINT

1

## INTRODUCTION

1.     This statewide class action concerns the despicable and illegal practice of price-gouging of essential groceries, specifically eggs, in the midst of the ongoing and unprecedented pandemic. Plaintiffs and the class they seek to represent bought grossly marked-up eggs through the supply chain created by the defendants, which includes producers, wholesalers, and retailers. Because consumers such as plaintiffs lack access to information about which of the defendants, or all of them, participated in the price-gouging resulting in a near-tripling of egg prices in the past 30 days, plaintiffs have sued all the defendants in the alternative. Plaintiffs cannot assert that every defendant engaged in price-gouging, but plaintiffs can and do assert that some or all of these defendants illegally marked up egg prices following Governor Abbott's declaration of an emergency in violation of Texas law.

2.     The world is in the midst of a global pandemic involving a novel coronavirus called COVID-19 that causes an often severe and sometimes fatal respiratory infection. The outbreak originated in December, 2019, in Wuhan, Hubei Province, China, and in short order the local epidemic spread globally and was deemed a pandemic by the World Health Organization in March, 2020.

3.     The first reported case of COVID-19 in the United States was diagnosed in Washington state in late January, 2020. The case involved a man who had recently travelled to the epicenter of the outbreak in Wuhan. Although this was

the first case confirmed by the Centers for Disease Control, scientists and public health officials now believe that there may have been other cases of COVID-19 in the United States prior to that date.

4.    By mid-March 2020, there were reported cases in all 50 American states. The federal government, most states, and many local governments called for stay-at-home and social distancing measures designed to slow the spread of the disease. Texas Governor Greg Abbott declared a state of emergency in this state on March 13, 2020 and extended it on April 12, 2020. As of the writing of this complaint, the vast majority of Americans are subject to similar measures. Even in areas not subject to government-mandated stay-at-home orders, most people are voluntarily staying at home except to shop for necessities and to go to work in "essential" occupations such as healthcare and food sales and delivery services. The undersigned counsel writing this complaint is doing so from his home office.

5.    The economic effect of the government-mandated and voluntary measures to combat the pandemic has been extreme. Many are out of work. Many have had their wages and salaries reduced. Bars and restaurants have been mostly closed for weeks, some remaining open but limiting themselves to curbside delivery and home delivery, and it is predicted many will never re-open. Professional and college sports seasons have been canceled altogether, throwing many out of work. Schools, colleges, and universities are now limited to online classes. Those in the

business of putting on concerts, plays, and other forms of entertainment are idle as public gatherings have been banned. All casinos are closed, throwing many more out of work. The Riverwalk in San Antonio, Sixth Street in Austin, and other famous Texas attractions are all deserted. Oil prices are at their lowest point in decades. The stock market is in freefall.

6.     As in any time of economic turmoil, there are those who seek to profit from the misery of millions. Defendants, who are producers, wholesalers, and retailers of eggs, comprise one such set of actors seeking to unfairly profit from the increased consumer demand for eggs in the midst of the ongoing crisis. Again, because it is impossible for consumers such as plaintiffs to obtain information concerning the secretive process of price-setting, this lawsuit does not assert that each and every defendant engaged in price-gouging. Rather, plaintiffs assert that, at a minimum, some of these defendants did so. This pleading in the alternative is specifically authorized by Rule 20(2)(A) of the Federal Rules of Civil Procedure.

7.     Between the onset of the COVID-19 pandemic and March 30, 2020, the price of eggs nearly tripled in Texas. In the weeks since, they have remained much higher than their pre-emergency prices. Some or all of the defendants are engaging in price-gouging prohibited by Texas law. Plaintiffs allege this because of the undeniable fact that egg prices nearly tripled after the emergency declaration.

## PARTIES

8.     Plaintiff Kenneth Bell purchased eggs at a store owned or operated by defendant HEB Grocery Co., LP, at a grossly inflated price after the declaration of emergency by Governor Abbott.

9.     Plaintiff Sherry Dabbs-Laury purchased eggs at stores owned or operated by defendants Lowe's Markets Inc., Costco Wholesale Corp., Walmart Stores, Inc., and The Kroger Company at grossly inflated prices after the declaration of emergency by Governor Abbott.

10.     Plaintiff Charlene Dirks purchased eggs at stores owned or operated by defendants Brookshire's Grocery Co., Walmart Stores, Inc., and The Kroger Company at grossly inflated prices after the declaration of emergency by Governor Abbott.

11.     Plaintiff Wendy Brown purchased eggs at a store owned by defendant Walmart Stores, Inc. at a grossly inflated price after the declaration of emergency by Governor Abbott.

12.     Plaintiff Tonnie Walker-Beck purchased eggs at a store owned by defendant Albertson's Companies, Inc. at a grossly inflated price after the declaration of emergency by Governor Abbott

13.     Defendant Cal-Maine Foods, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Jackson, Mississippi. It is a corporate citizen of Delaware and Mississippi.

14.     Defendant Rose Acre Farms, Inc. is a corporation organized under the laws of Indiana with its principal place of business in Seymour, Indiana. It is a corporate citizen of Indiana.

15.     Defendant Hillandale Farms is a corporation organized under the laws of Ohio, with its principal place of business in Newark, Ohio. It is a corporate citizen of Ohio.

16.     Defendant Trillium Farm Holdings, LLC is an entity organized under the laws of Ohio, with its principal place of business in Johnstown, Ohio. It is a corporate citizen of Ohio.

17.     Defendant Rembrandt Enterprises, Inc. is a corporation organized under the laws of Iowa, with its principal place of business in Spirit Lake, Iowa. It is a corporate citizen of Iowa.

18.     Defendant Hickman's Egg Ranch, Inc. is a corporation organized under the laws of Arizona, with its principal place of business in Buckeye, Arizona. It is a corporate citizen of Arizona.

19.     Defendant Daybreak Foods, Inc. is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Mills, Wisconsin. It is a corporate citizen of Wisconsin.

20.     Defendant Weaver Bros., Inc. is a corporation organized under the laws of Ohio, with its principal place of business in Versailles, Ohio. It is a corporate citizen of Ohio.

21.     Defendant Sparboe Foods Corp. is a corporation organized under the laws of Iowa, with its principal place of business in Litchfield, Minnesota. It is a corporate citizen of Iowa and Minnesota.

22.     Defendant Herbruck's Poultry Ranch, Inc. is a corporation organized under the laws of Michigan, with its principal place of business in Saranac, Michigan. It is a corporate citizen of Michigan.

23.     Defendant Centrum Valley Farms, L.P., is an entity organized under the laws of Indiana, with its principal place of business in Clarion, Iowa. It is a corporate citizen of Iowa and Indiana.

24.     Defendant Opal Foods, LLC is an entity organized under the laws of Delaware, with its principal place of business in Neosho, MO. It is a corporate citizen of Delaware and Missouri.

25.     Defendant Midwest Poultry Services, L.P., is an entity organized under the laws of Indiana, with its principal place of business in Mentone, Indiana. It is a corporate citizen of Indiana.

26.     The defendants described in Paragraphs 15-27 are involved in egg production, distribution, and wholesale delivery, and are in the supply chain bringing eggs to market in the Western District of Texas.

27.     Defendant Costco Wholesale Corp. is a corporation organized under the laws of Washington with its principal place of business in Issaquah, Washington. It is a corporate citizen of Washington.

28.     Defendant Albertson's Companies, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Boise, Idaho. It is a corporate citizen of Delaware and Idaho.

29.     Defendant Wal-Mart Stores, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Bentonville, Arkansas. It is a corporate citizen of Delaware and Arkansas.

30.     Defendant The Kroger Co. is a corporation organized under the laws of Ohio, with its principal place of business in Cincinnati, Ohio. It is a corporate citizen of Ohio.

31.    Defendant HEB Grocery Co., L.P. is an entity organized under the laws of Texas, with its principal place of business in San Antonio, Texas. It is a corporate citizen of Texas.

32.    Defendant Brookshire's Grocery Co. is a corporation organized under the laws of Texas, with its principal place of business in Tyler, Texas. It is a corporate citizen of Texas.

33.    Defendant Lowe's Markets, Inc. is a corporation organized under the laws of Texas, with its principal place of business in Littlefield, Texas.

34.    The defendants described in paragraphs 29-34 are owners or operators of retail stores or online retailers doing business in this district.

## JURISDICTION AND VENUE

35.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the claims in this case form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.00 and the members of the class include citizens of different states than some or all of the defendants.

36.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to plaintiffs' complaint occurred in this district.

37.    Each defendant, whether a retailer, wholesaler, or producer of eggs, is in the business of supplying eggs to customers in this federal district. Each defendant is part of the supply chain for eggs in Texas.

## LEGAL FRAMEWORK AND BACKGROUND

38.    The Texas Deceptive Trade Practices Act contains a section that specifically addresses the pricing of necessities like food in an emergency situations. Section 17.46(b)(27) of the Texas Business and Commerce Code prohibits "selling or leasing fuel, food, medicine, lodging, building materials, construction tools, or another necessity at an exorbitant or excessive price."

39.    This section applies when Section 17.4625 of the same code is triggered. Section 17.4625 states that the "designated disaster period" begins, inter alia, when the Governor issues a proclamation or executive order declaring the disaster. This period ends thirty days after the disaster declaration expires.

40.    Governor Greg Abbott issued a disaster declaration on March 13th, and extended it for an additional 30 days on April 12th. See "Texas Gov. Greg Abbott extends disaster declaration for 30 days," available at https://abc13.com/coronavirus-covid-19-pandemic-texas-governor-abbott/6097736

41.    Because a declared disaster has existed in this state since March 13th, the provisions of Section 17.46(b)(27) have been in effect, making it unlawful for anyone in the state to sell food at an exorbitant or excessive price.

42.     Nothing in the Texas Code limits this provision to food or other necessities being sold at retail, rather than by producers, distributors, or wholesalers. On the contrary, the natural implication of the provision is that all sales at an exorbitant or excessive price, at any level of the supply chain, are prohibited during a declared disaster.

43. Before the pandemic, the price for generic eggs in Texas hovered near $1.00 per dozen. During the month of March, that price nearly tripled to almost $3.00 per dozen. This increase has not been caused by an increase in the cost or difficulty in producing eggs. Rather, it has been driven by increased demand, caused by the emergency situation. The price-gouging statute exists to prevent unscrupulous companies from taking advantage of such demand in emergencies. Yet many egg producers, wholesalers, and retailers have done precisely that.   Because the price of eggs nearly tripled during the month of March, and have remained at excessive or exorbitant prices to this day, it is clear that some defendant, or all of them, has disregarded Texas law and taken outrageous advantage of the emergency situation to profit from the misery of Texas residents.

44.     Pursuant to Rule 20 of the Federal Rules of Civil Procedure, plaintiffs may join all defendants against whom they seek relief jointly, severally, or in the alternative, arising out of the same transaction or series of transactions. Plaintiffs' purchases of eggs from retailers was part of a series of transactions that also included

11

any other sale of the eggs that occurred between their being laid and their arrival at the point of retail sale. Plaintiffs seek relief in the alternative from any and all entities that marked up the eggs more than ten percent during the COVID-19 emergency.

## CLASS ALLEGATIONS

45.    This statewide class action is maintainable against the defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following class against each defendant:

> All consumers who purchased eggs in the state of Texas that were sold, distributed, produced, or handled by any of the defendants during the state of emergency declared by Governor Greg Abbott on March 13, 2020. All employees of the Court and plaintiffs' counsel are excluded.

46.    Because plaintiffs bring this case in the alternative against numerous individual entities involved in selling eggs in Texas, plaintiffs anticipate that they will seek to certify a number of subclasses against particular defendants.

47.    Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Texas is the nation's second most populous state, with more than 28 million residents. Since the average per capita egg consumption in the United States is more than 285 per year, this means that Texans purchase almost eight billion eggs per year. See https://www.statista.com/statistics/183678/per-capita-consumption-of-eggs-in-the-us-since-2000/. The vast majority of these eggs are sold by the defendants named in this lawsuit, who represent a large percentage of the Texas grocery market, as well

12

as the thirteen largest wholesalers of eggs in Texas. The number of people who purchased eggs during the state of emergency is far too large for practicable joinder in a single suit.

48.     Pursuant to Rule 23(a)(2), this case is predominated by questions of law and fact common to all class members, including whether the defendants charged an excessive or exorbitant price for eggs during the COVID-19 emergency.

49.     Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class. Every member of the class is a consumer who purchased eggs during the emergency.

50.     Pursuant to Rule 23(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interest adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

51.     Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiff, like those of all class members, arise out of conduct by one or more of the defendants to raise the price of eggs in Texas, affecting all Texas consumers, and thus all class members, in the same fashion. For these

reasons, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

## COUNT ONE: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

## CLAIM FOR INJUNCTIVE RELIEF

52.     Plaintiffs incorporate by reference the factual averments of the preceding paragraphs as if fully set forth herein.

53.     The Texas Deceptive Trade Practices Act (DTPA, Tex. Bus. & Comm.Ed Code Chapter 17) prohibits businesses from engaging "false, misleading, or deceptive practices," and contains an illustrative list of such practices.

54.     One of the practices explicitly banned in the DTPA's list is "selling or leasing fuel, food, medicine, lodging, building materials, construction tools, or another necessity at an exorbitant or excessive price." Tex. Bus. & Comm. Code § 17.46(b)(27). Subsection 27 also bans "demanding an exorbitant or excessive price" for such items. Id.

55.     One or more defendants violated § 17.46(b)(27) by unjustifiably raising the price of eggs to an exorbitant or excessive price during the declared state of emergency.

56.     Plaintiffs sent the notice required by Section 17.505 of the Business and Professions Code prior to filing this action, and intend to proceed with the case sixty

days after the date of the notice. In addition, plaintiffs sent a copy of these notices to the Consumer Protection Division of the Texas Attorney General's office.

57.     The Texas Deceptive Trade Practices Act Authorizes injunctive relief for violation of any of the enumerated categories in Section 17.46 of the Business and Professions Code. Tex. Bus. & Prof. Code 17.50(b)(2).

58.     Plaintiffs seek to enjoin all defendants from selling (at any level in the supply chain) eggs at a price more than ten percent greater than the price of eggs prior to the declaration of emergency on March 13, 2020.

## COUNT TWO: VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

### CLAIM FOR DAMAGES, INCLUDING TREBLE DAMAGES

59.     Plaintiffs incorporate by reference and reallege all factual averments of the preceding paragraphs as if fully set forth herein.

60.     As explained in Count One, the defendants violated the Texas Deceptive Trade Practices Act, specifically subsection 27 of Section 17.46(b) of the Texas Business and Professions Code, by selling eggs at an exorbitant or excessive price.

61.     Defendants, or some of them, set the exorbitant or excessive price of eggs intentionally.

62.     This intentional violation entitles plaintiffs and the class to damages, including up to three times the excess amount paid for eggs during the emergency.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief,

(A) An order certifying the above-described class pursuant to Federal Rule of Civil Procedure 23, with appropriate notice to absent class members;

(B) An order appointing plaintiffs' counsel as class counsel for the statewide class;

(C) A declaratory ruling that the defendants have engaged in the practices alleged herein in violation of Texas law;

(D) A permanent injunction enjoining defendants from selling eggs at prices prohibited by Section 17.46(b)(27) of the Texas Business & Professions Code for the remainder of the COVID-19 emergency;

(E) After a jury trial, and award of damages, including treble damages, to plaintiffs and absent class members in an amount determined by the court pursuant to Texas law;

(F) Attorneys' fees as authorized by Section 17.50(d) of the Texas Business & Professions Code;

(G) Any further or different relief the Court may find appropriate.

Respectfully submitted,

*/s/ Alexander McSwain*
ATTORNEY
THE CARLSON LAW FIRM
Texas State Bar No: 24106292
100 E. Central Texas Expy
Killeen, TX 76541
Telephone: (800) 359-5690
Facsimile: (254) 526-8204
E-Mail:
amcswain@carlsonattorneys.com


John E. Norris
(*pro hac vice anticipated*)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, AL 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
jnorris@davisnorris.com

ATTORNEYS FOR PLAINTIFFS