## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **KENNETH BELL, et al., on behalf of themselves, and all others similarly situated,** | § § § § | |
| **Plaintiffs,** | § § | **A-20-CV-461-RP** |
| **v.** | § § | |
| **CAL MAINE FOODS, INC., et al.,** | § § | |
| **Defendants.** | § | |

## CLAIMANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

## I.     Introduction

On July 14, 2021, U.S. Magistrate Judge Mark Lane issued a well-reasoned opinion recommending that this lawsuit be dismissed without prejudice for lack of subject-matter jurisdiction. Magistrate Judge Lane determined that Plaintiffs allegations' concerning the Urner-Barry Index were insufficient to allege joint liability on the part of all defendants. Without such joint liability, it is impossible to aggregate the damages of all plaintiffs and the class or classes they seek to represent to reach the $5,000,000 amount-in-controversy threshold set by the Class Action Fairness Act. See 28 U.S.C. § 1332(d)(2).

While Plaintiffs believe that all of the other Defendants did price gouge Texas consumers and that information demonstrating this may come out in discovery, we

1

accept that the information to plausibly plead the participation of Defendants other than Cal-Maine Foods (Cal-Maine), Centrum Valley Farms (Centrum), Trillium Farm Holdings, LLC (Trillium), and Lucerne simply is not currently available. However, Plaintiffs object to the Report & Recommendation as it pertains to these four Defendants. Without regard to the Urner-Barry question analyzed by Magistrate Judge Lane, the Amended Complaint sufficiently alleges five million dollars in controversy against Cal-Maine, Centrum, Trillium, and Lucerne.

## II.    Argument

### A. The Defendants who handled, sold, or distributed the eggs Plaintiffs purchased are jointly liable.

As noted above, Magistrate Judge Lane determined that no joint liability existed simply from participating in the Urner-Barry Index. As to several of the Defendants, this was the only allegation that Plaintiffs made in the Amended Complaint. However, Plaintiffs also allege, in allegations unrelated to Urner-Barry, that each of them purchased eggs distributed by Cal-Maine, and that Defendants Centrum and Trillium participated with Cal-Maine in the production, packing, or distribution of the eggs purchased by Plaintiff Wendy Brown. (Doc. 119 at ¶ 58). The Amended Complaint further alleged that Defendant Lucerne participated with Cal-Maine in the production, packing, or distribution of the eggs purchased by Plaintiff Tonnie Walker-Beck. (Doc. 119 at ¶ 63). Because these Defendants were all directly involved in the distribution of eggs that Plaintiffs bought, they are jointly

liable for the harm that befell Plaintiffs when they were charged an excessive and exorbitant price in violation of the Texas Deceptive Trade Practices Act.

Magistrate Judge Lane did not analyze either the potential joint liability of the Defendants who directly handled eggs that Plaintiffs purchased or whether Plaintiffs alleged more than five million dollars in controversy with respect to those Defendants. As Magistrate Judge Lane noted, "claims against multiple defendants can be 'aggregated for the purpose of meeting the jurisdictional requirement if the defendants are jointly liable to the plaintiff." (Doc. 163 at 4 (quoting Hollinger v. Home State Cty. Mut. Ins. Co., No. 5:09-CV-118, 2010 WL 11530632, at *8 (E.D. Tex. Aug. 5, 2010))). In this case, the claims against Defendants Cal-Maine, Centrum, Trillium, and Lucerne may be aggregated because these Defendants are jointly liable. This aggregation has nothing to do with Plaintiffs' allegations concerning the Urner-Barry Index and rests solely on the allegations that these Defendants were directly involved in distributing the eggs that Plaintiffs purchased, as evidenced by their names or plant codes appearing on egg cartons from those stores. As will be demonstrated below, the claims against these Defendants (and, in fact, against Cal-Maine by itself), place more than five million dollars in controversy.

**B. The amount-in-controversy regarding Defendants Cal-Maine, Lucerne, Centrum, and Trillium is greater than five million dollars.**

The Amended Complaint also alleges facts sufficient to conclude that five million dollars have been placed in controversy with regard to eggs distributed by Cal-Maine, Lucerne, Centrum, and Trillium. Plaintiffs allege that the 28 million residents of Texas purchase approximately 285 eggs per capita each year, for a total of almost 8 billion eggs. Doing a little math reveals that each Texan buys an average of 2 dozen eggs a month, meaning that roughly 56 million dozen-egg packages are sold in Texas each month. Plaintiffs include purchasers from H-E-B, Kroger, Brookshire's, Wal-Mart, and Randall's, which is owned by Albertson's, as well as Lowe's Foods, a smaller store chain. These chains are among the largest Texas, and together make up a majority of the groceries sold in the state. In one list available online, Wal-Mart has 293 stores in Texas, H-E-B has 276, Kroger has 206, Albertsons has 149, and Brookshire's has 78. http://supermarketpage.com/state/TX/.[1] No other store chain has more than 54. Id. The stores that sold eggs to Plaintiffs have a total of 1,158 locations in Texas; all other supermarkets number fewer than 500 stores combined. Thus, it is likely a conservative estimate to say that the stores that sold to Plaintiffs and the class or

---

[1] This list is cited for convenience, but its numbers are almost certainly too low. H-E-B's own website states that it has more than 340 stores, a few of which are in Mexico https://www.heb.com/static-page/article-template/Our-Story. Statista states that there are more than 600 Wal-Mart Stores in Texas. https://www.statista.com/statistics/1167169/walmart-number-of-stores-by-state-us/. ScrapeHero lists Kroger with 210 stores in Texas. https://www.scrapehero.com/kroger-store-locations/.

classes they seek to represent sold at least two-thirds of the eggs sold in Texas in the months following the declaration of emergency by Governor Abbott. Market data for the whole state is elusive, but in the Dallas market, where H-E-B has much less presence than most of the rest of the state, stores owned by these companies had a market share of 65.6% in 2019. <u>See</u> https://www.dallasnews.com/business/retail/2019/08/11/grocery-store-wars-walmart-central-market-post-big-gains-as-whole-foods-drops/. No reason exists to believe this changed significantly in 2020.

Plaintiffs also alleged the approximate prices they paid, which increased by more than a dollar in every case, and by more than two dollars in some cases, in the period immediately following the declaration of emergency. (Doc. 119 at ¶¶ 36, 41, 46, 51, and 56.) In addition to alleging the approximate price paid by the individual Plaintiffs, Plaintiffs also include in their Amended Complaint a chart from the Urner-Barry Index showing the average price of a dozen eggs in Texas rose by nearly two dollars, and was more than a dollar higher than pre-pandemic levels for over a month. (Doc. 119 at ¶ 67)[2] As noted above, during that month, Texans likely

---

[2] The magistrate judge noted that Defendants argue this is not the proper chart for Texas. Plaintiffs were initially provided this chart by Urner-Barry, and went back to them to ask for the correct chart. Urner-Barry recently provided us with this chart, instead, which shows an almost identical spike in the immediate aftermath of the

purchased more than 50 million dozen eggs, and a reasonable estimate would be that they purchased approximately two-thirds of them from the stores that sold eggs to Plaintiffs, whom Plaintiffs allege got those eggs from Defendants Cal-Maine, Trillium, Centrum, and Lucerne.

The parties will almost certainly dispute how much of the price that was charged to Plaintiffs and the class they seek to represent can be considered excessive. However, in terms of the amount placed in controversy by Plaintiffs' allegations, the math is overwhelming. If the average rise in price was one dollar a dozen (a conservative estimate given the prices alleged by Plaintiffs and reported by Urner-Barry), and Texans bought two thirds of 56 million dozen eggs from companies supplied by Defendants, that would mean roughly 37.5 million dollars in controversy. In other words, Plaintiffs' math could be off by a factor of seven and

---

pandemic declaration:



the threshold for federal jurisdiction under CAFA would still be met. If just ten percent of the eggs sold in Texas were purchased by members of the putative class, the threshold would be met.

### C. Any supposed limitations on the class should be addressed at the class certification stage.

Given this overwhelming mathematical evidence of the amount-in-controversy, any disputes about the size or scope of the class should be decided at the class certification stage. For example, Defendants will likely attempt to restrict the size of the class by arguing that only the specific type and packaging of eggs (as in the grade, size, and number of eggs in the package) purchased by the Plaintiffs should be included. However, under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff can have standing to pursue the claims of putative class members who purchased substantially similar products. See, e.g., Browning v. Anheuser-Busch, LLC, --- F. Supp. 3d ---, 2021 WL 1940645 at *8 (W.D. Mo. May 13, 2021) (describing an approach that categorically rejects a plaintiff's standing to pursue claims related to substantially similar unpurchased products as "irreconcilable with the Supreme Court's decision in Gratz v. Bollinger" 539 U.S. 244, 265 (2003); Mednick v. Precor, Inc., 2014 WL 6474915 at *4 (N.D. Ill. Nov. 3, 2014); Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 571 (N.D. Cal. 2013). As Clancy pointed out, this question is best resolved on class certification:

Deciding at the pleading stage that a plaintiff cannot represent a class who purchased any different products than the plaintiff seems unwarranted, at least on the facts of this case. A plaintiff has sufficiently "typical" claims to represent a class if his claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998). Whether products are "sufficiently similar" is an appropriate inquiry, but it does not relate to standing: a plaintiff has no more standing to assert claims relating to a "similar" product he did not buy than he does to assert claims relating to a "dissimilar" product he did not buy. Seen this way, analyzing the "sufficient similarity" of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23.

Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 571 (N.D. Cal. 2013).

Thus, while Defendants can certainly raise arguments about typicality, adequacy, and commonality at the class certification stage, such arguments do not mean that Plaintiffs have not placed the claims of the entire putative class in controversy. The Fifth Circuit has stated that, in determining amount in controversy, "[t]he required 'demonstration concerns what the plaintiff is claiming … not whether the plaintiff is likely to win or be awarded everything he seeks." Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (quoting Berniard v. Dow Chem. Co., 481 Fed. Appx. 859, 862 (5th Cir. 2010). In this case, Plaintiffs have alleged a class that includes all eggs sold at an excessive price in the stores supplied by the Defendants. That likely includes stores that are not mentioned in the complaint, but even limiting it to the stores described above, a conservative estimate places the amount-in-controversy well over five million dollars.

## III.    Conclusion

Because Magistrate Judge Lane addressed only the Urner-Barry question as it relates to all Defendants, and has not had the opportunity to determine whether Plaintiffs alleged a sufficient amount-in-controversy with respect to those Defendants who supplied the eggs they purchased, Plaintiffs respectfully request that the Court remand this question to Magistrate Judge Lane for initial determination. To the extent that the Court wishes to make the determination itself, Plaintiffs believe the amount-in-controversy is clearly met, given the size of Texas's egg market and the predominance of the remaining Defendants therein. In addition, if the Court prefers, Plaintiffs stand ready to amend the complaint to include additional facts about the potential size of the class and the amount-in-controversy, including all facts herein.

Respectfully submitted this 28th day of July, 2021,

/s/    Wesley W. Barnett
Attorney for Plaintiffs

**OF COUNSEL:**
Wesley W. Barnett
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
Email: wbarnett@davisnorris.com

THE CARLSON LAW FIRM
100 E. Central Texas Expy

Killeen, Texas 76541
Telephone: 254.526.5688
Facsimile: 254.526.8204

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Court via the CM/ECF system of the United States District Court for the Western District of Texas on July 28, 2021, and served on all counsel of record who are registered for electronic service. In addition, on July 28, 2021, a true and correct copy of the foregoing document was served on Christopher Ondeck and Stephen Chuk via electronic mail.

/s/     Wesley W. Barnett
Attorney for Plaintiffs