IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KENNETH BELL, et al., ) | |
| on behalf of themselves and all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:20-CV-00461-RP |
| ) | |
| CAL-MAINE FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO VACATE**

Defendants' responses to Plaintiffs' Rule 59 motion rest on fundamental misunderstandings of both the law and the Court's prior rulings in this case. On the legal side, all responding Defendants appear to believe that joint and several liability can only attach when defendants intentionally work together to harm the plaintiff, requiring Plaintiffs to allege a conspiracy or concerted action. However, under Texas law, concerted action is simply not necessary for joint and several liability to attach. Two or more defendants acting independently to contribute to plaintiffs' injuries can be jointly and severally liable. Secondly, Defendants operate under the illusion that the Court agreed with them about all of the supposed "defects" they argued were in the prior complaint, or that the Court has somehow already found the facts discussed in Plaintiffs' Objection to the Magistrate Judge's ruling insufficient. In reality, the

1

Cout has ruled only that the facts asserted in the First Amended Complaint did not allege an amount in controversy that met the threshold in the Class Action Fairness Act. Plaintiffs' proposed Second Amended Complaint remedies that problem. Plaintiffs pray that the Court amend its order of dismissal to allow leave to amend.

### I.  The Court's Only Prior Holding is that the First Amended Complaint Did Not Allege an Amount in Controversy Sufficient for Subject Matter Jurisdiction.

Defendants in this case moved to dismiss Plaintiffs' First Amended Complaint, including every conceivable ground, from subject matter jurisdiction to the constitutionality of the statute.[1] The Court, first in the person of Magistrate Judge Mark Lane and then in adopting Magistrate Lane's Report and Recommendation (R&R), ruled only on a narrow aspect of subject-matter jurisdiction, holding that Plaintiffs failed to allege an amount in controversy above the five-million-dollar threshold in the Class Action Fairness Act. See 28 U.S.C. § 1332(d). The Court reached no other grounds in Defendants' motion to dismiss. Defendants cite to the maxim that a court may affirm for any ground supported by the record, but their understanding of it is entirely backwards, since they seem to think that, because the Court granted their motion to dismiss on one ground, it must have agreed with all the other grounds as well.

---

[1] Plaintiffs (and the state of Texas) thoroughly explained why the vast majority of these grounds were baseless. Unlike Defendants, however, we do not assume the Court agrees with us where it has not ruled. Defendants will have every opportunity to present these arguments if the Court grants the Rule 59 motion and allows filing of the Second Amended Complaint, as it should.

The R&R analyzed the amount-in-controversy in terms of the First Amended Complaint's theory that all of the egg producers sued in this case participated in manipulating the Urner-Barry Index. In that context, it determined that Plaintiffs alleged only that the Defendants engaged in the same activity of manipulating the Urner-Barry Index, and not that they coordinated their efforts or worked together to do so. (Doc. 163 at 6). In other words, the Magistrate Judge's ruling was that Plaintiffs needed evidence of coordinated action in order to rely on the Urner-Barry theory to allege joint and several liability, thus allowing for the aggregation of claims against all Defendants. A close review of the Magistrate's ruling makes it clear that the Urner-Barry theory is the only one he considered, thus ignoring Plaintiffs' other theory that certain Defendants directly contributed to the price of eggs that Plaintiffs' purchased. Not one word against this theory is found in the R&R. All discussion of whether evidence of coordinated activity is required for joint and several liability exists in the context of plausibly alleging the manipulation of the Urner-Barry Index. Any attempt to twist the Court's words into a requirement that Plaintiffs allege concerted activity among Defendants who directly contributed to Plaintiffs' injuries must be rejected.

Plaintiffs' Objection to the R&R simply asked the Court to evaluate the direct contribution theory, since the Magistrate had focused only on the Urner-Barry theory. In doing so, Plaintiffs included additional facts and stated that they stood

ready to amend the complaint.[2] However, Plaintiffs did not ask for formal permission to amend, a fact the Court noted in overruling the objection and declining to evaluate Plaintiffs' direct liability theory:

> Plaintiffs did not seek to amend their complaint to add allegations necessary to sustain their joint and several liability theory against Cal-Maine, Centrum, Trillium, and Lucerne, and the Court makes it ruling based on the live complaint, (Dkt. 119).

(Doc. 169 at 2). Thus, the Court made it clear that it did not consider the new facts presented in the objection when it approved the R&R and dismissed the case. The allegation from Cal-Maine that Plaintiffs are using Rule 59(e) to "rehash" facts or evidence already considered is utterly baseless, since the Court explicitly excluded all facts that were not in the First Amended Complaint. The Court, as it laid out in plain terms, ruled only on the live complaint, and only on whether that complaint plausibly alleged that the amount-in-controversy was met. Any assertion that the Second Amended Complaint has already been rejected is disingenuous at best.

The same is true for any notion that the Court has somehow already rejected Plaintiffs' claims on the merits or on any ground other than subject matter jurisdiction. Defendants harp on the idea that they have somehow repeatedly explained the "defects" in the complaint, ignoring the fact that Plaintiffs have presented counterarguments explaining why such defects don't exist. Like Plaintiffs,

---

[2] At no point did Plaintiffs represent that the new complaint would add allegations of concerted activity to support the Urner-Barry theory.

Defendants may be entitled to presume that their view of the law is the correct one, but they are not entitled to presume that the Court has already agreed with them when it has done nothing of the sort. The Court should grant the Rule 59 motion so the new complaint may be evaluated on its merits.

## II. The Second Amended Complaint Properly Alleges More than Five Million Dollars in Controversy.

As the Plaintiffs explained in our objection to the Magistrate's R&R, it is clear that at least five million dollars (if not several times that) has been plausibly placed in controversy by the Second Amended Complaint. It must be noted that the amount in controversy or Plaintiffs' entitlement to it need not be proven by the complaint. All that is required is to allege that, under some plausible set of circumstances, Plaintiffs could recover as much as $5,000,000. The Second Amended Complaint easily does that, detailing the egg market in Texas, in which approximately 56 million dozen-egg packages are sold each month, almost two-thirds of which are sold at the stores where Plaintiffs purchased the eggs at issue. Because of this market share, and because the price of eggs spiked by more than a dollar per dozen, as evidenced by the prices paid by Plaintiffs and the averages reported by the Urner-Barry Index, the proposed complaint calculates that more than 37 million dollars could be at issue. Each of the plaintiffs bought regular store-brand eggs, which are the most common eggs sold in stores, as compared to specialty eggs. It is entirely

plausible that these basic eggs form much more than one-seventh of those sold in the stores at issue, and that the amount in controversy far exceeds the threshold.

The Court should also note that Cal-Maine participated directly in the distribution of *all* the eggs purchased by Plaintiffs. In other words, there is no need to aggregate amounts against various Defendants to determine that jurisdiction against Cal-Maine is appropriate. Cal-Maine sold basic eggs to all the stores from which Plaintiffs purchased eggs, meaning the total amount in controversy with respect to them is likely closer to 37 million than to five million.

Aggregation is only necessary regarding Defendants Centrum, Trillium, and Lucerne. Defendants Centrum and Trillium charged an excessive price on the same eggs also sold or distributed by Cal-Maine to the retailer where Wendy Brown purchased them, thus contributing to Ms. Brown's injuries. Defendant Lucerne charged an excessive price on the same eggs sold or distributed by Cal-Maine to the retailer where Tonnie Walker-Beck purchased them, thus contributing to Ms. Walker-Beck's injuries. As Plaintiffs will explain below, these Defendants' independent actions contributed to Plaintiffs' injuries in a way that makes them jointly and severally liable under Texas law.

### A. The Texas DTPA Allows for Joint and Several Liability.

As they did in response to the Objection to the Report and Recommendation, Defendants make the unavailing argument that the Texas Deceptive Trade Practices

Act does not allow for joint and several liability outside a particular section. Neither of the responses submitted by Defendants provides any case law in support of this idea, because it is untrue. In reality, Texas courts have found joint and several liability in numerous cases proceeding under a variety of subsections of the act. Petty v. Ferguson, 601 S.W.2d 782, 784 (Tex. App. 1980) (affirming "a joint and several judgment" in DTPA case); St. Gelais v. Jackson, 769 S.W.2d 249, 259-60 (Tex. App. 1988) (same, with respect to part of joint and several verdict); Hycel Inc. v. Wittstruck, 690 S.W.2d 914, 918 (Tex. App. 1985) (reforming "a joint and several judgment" via remittitur in DTPA case). Texas courts have also noted DTPA claims seeking to impose joint and several liability where they found for defendant, without ever stating that joint and several liability could not exist. Mobil Oil Corp. v. Frederick, 621 S.W.2d 595, 596 (Tex. 1981) (noting "the trial court rendered a joint and several judgment" and reversing on other grounds); Sholtz v. Sigel, 601 S.W.2d 516, 517 (reversing joint and several judgment under DTPA because measure of damages was incorrect).

### B. Proof of Concerted Action is Not Required

Defendants argue that Plaintiffs must allege that they worked in concert for joint and several liability to attach. In doing so, they distort the Magistrate Judge's words, removing them from the context of the Urner-Barry theory. In that context, parallel participation in the index was not sufficient to create joint and several

liability. As stated above, however, the Court has not addressed a simpler, more traditional kind of joint and several liability, in which multiple defendants, acting independently, contribute to a plaintiff's injuries.

Defendants' argument that joint and several liability can only attach where the entities are related or somehow coordinated their actions is unsupportable by even the most basic understanding of joint and several liability. For example, two drivers who acted negligently in different ways (or in the same way), who never knew each other before the accident, who did not coordinate their actions, but who nonetheless each contributed to a plaintiffs' injuries in the accident, may be joint and severally liable. The two drivers need not be related, nor do they need to have intentionally worked together. See Simon v. Gulf Coast Rental Tool Service, Inc., 408 F. Supp. 911, 915-16 (N.D. Tex. 1976) (two suppliers of pipe that contributed to oil well failure jointly and severally liable even though they acted independently). Similarly, two egg companies, handling the same eggs at some point in the distribution chain, each act separately in contravention of Texas law by charging an excessive price during an emergency, and thus each contribute to a plaintiff's injury in paying such an excessive price, can be jointly and severally liable. As in the case of the two drivers in the automobile accident, no requirement exists that the egg companies be related or intentionally conspire together.

Defendants Centrum and Trillium cite no cases at all for this proposition, simply declaring by their own fiat that joint and several liability requires evidence of concerted action, while Cal-Maine cites a single case. It is Ex parte Hughes, a habeas petition in a case from 1939. 129 S.W.2d 270, 279 (Tex. 1939). The problem with Defendants' reliance on this case begins with the nature of the case itself. Rather than being a civil case examining the contours of joint and several liability and what must be alleged to trigger it under Texas law, the case is a habeas corpus petition seeking to free Mr. Hughes from jail after he was held in contempt for refusing to produce certain business records. Id. at 272-73. The primary holding of the case was that because the State had no power to institute an equity suit to enforce usury laws, the trial court had no jurisdiction to hold Mr. Hughes in contempt. Id. at 274-75. The terms "joint and several liability" do not even appear in the opinion, and the discussion about defendants being "engaged in the same kind or character of unlawful business" is dicta concerning whether the defendants below were properly joined, under the joinder rules that existed in Texas state court at that time, which bore little resemblance to the Federal Rules of Civil Procedure governing this case. Id. at 279.

Furthermore, even if the case had anything at all to do with joint and several liability in a civil case, Cal-Maine's own quotation from this case, misleading though it is as dicta in a case where no question of joint and several liability was decided,

explains in part why it is inapposite. The court noted that the suit below alleged only that "defendants are engaged in the same kind or character of unlawful business." (Id., quoted by Doc. 173 at 7). Plaintiffs, however, have alleged not merely that Defendants have engaged in the same unlawful activity. Rather, with respect to the eggs purchased by Wendy Brown, Defendants Centrum, Trillium, and Cal-Maine each engaged in unlawful price gouging of *the same eggs*, and each contributed to Ms. Brown's injury. Likewise, with respect to the eggs purchased by Plaintiff Tonnie Walker-Beck, Defendants Lucerne and Cal-Maine each engaged in unlawful price gouging of the same eggs, and each contributed to the injuries suffered by Ms. Walker-Beck. Therefore, joint and several liability is appropriate.

### III.   Conclusion

The procedural posture of this case is simple. The Court has determined only that Plaintiffs First Amended Complaint did not plausibly allege that five million dollars were in controversy. Plaintiffs have clearly added facts that demonstrate that threshold is now met. The Court should grant the Rule 59 motion and allow for the filing of the Second Amended Complaint.

Respectfully submitted this 8th day of November, 2021,

/s/   Wesley W. Barnett
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record on November 8, 2021, through the CM/ECF system of the Western District of Texas.

                                              /s/     Wesley W. Barnett
                                              Attorney for Plaintiffs